ANNA J. ROBINSON, APPELLEE, v. CITY OF OMAHA, APPELLANT.

FILED JUNE 11, 1909. No. 15,637.

1. Cities: INJURY: QUESTION FOR JURY. In an action against a city for personal injuries resulting from a defective sidewalk, testimony disclosing plaintiff's opinion and the result of tests as to the cause of the accident may be considered by the jury, when admitted without objection.

2. **Appeal:** EVIDENCE. Error cannot be predicated on the admission of testimony identical with that already admitted without objection.

3. **Cities:** INJURY: LIABILITY. A city denying responsibility for the work of trespassers who tore up part of a board sidewalk in a street and replaced it with cement cannot evade liability for failure to repair a defect in a connecting walk on the ground that temporary barriers erected by such trespassers to protect the cement until it solidified were removed without the city's consent.

4. **Trial:** INSTRUCTIONS. Where the instructions in an action against a city for personal injuries resulting from a defective sidewalk clearly direct the jury that plaintiff cannot recover unless the injury was caused by a defect at the place of the accident, a separate instruction is not erroneous because it fails to repeat that direction.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Harry E. Burnam, I. J. Dunn* and *John A. Rine,* for appellant.

*John T. Cathers, contra.*

ROSE, J.

When plaintiff was walking eastward along Davenport street between Twenty-Fifth and Twenty-Sixth streets in the city of Omaha about 10 o'clock on the night of August 15, 1903, she fell on a board sidewalk and was seriously injured. Three or four days earlier a part of the board sidewalk west of the place where the accident occurred had been replaced with a cement walk several inches lower, leaving a projection at the approach to the west end of the remaining portion of the board walk. The difference in the elevation was perhaps six or seven inches, but not greater than the height of an ordinary step in a sidewalk. When plaintiff fell, she and her sister, Mrs. McWhorter, were passing from the new cement walk to the old board walk. The cement walk was constructed

by the adjacent lot owner without authority from the city. In her petition plaintiff states, in substance, that there was nothing under the west end of the board walk to support it, that it had been defective and dangerous for several years and that defendant knew of its unsafe condition long prior to the accident. Enough of the petition to show plaintiff's understanding of how she was injured is here reproduced: "August 15, 1903, at about the hour of 10 o'clock p. m. this plaintiff, while going east along said Davenport street, with a companion, between said Twenty-Fifth and Twenty-Sixth streets, and while exercising due care on her part, her companion stepped upon the north side of said wooden sidewalk, which caused the same to tip up, and this plaintiff's foot caught under said wooden sidewalk, and she was tripped and violently thrown, and in falling broke the humerus of her right arm, at or near the shoulder, and broke and tore the tendons and ligaments thereof, and she was thereby permanently injured."

The answer contained a general denial and a plea of contributory negligence on part of plaintiff. There was a verdict in her favor for $1,640, and from a judgment for that sum defendant appeals.

The record shows conclusively that plaintiff fell on the board sidewalk at the time and place stated, and was seriously injured. There is proof that some of the earth under the west end had been washed out, and that this condition had existed for some time. There is also testimony which shows that prior to the accident the section of the wooden sidewalk at the west end had been in a loose, rickety and rocking condition for several years. A witness who had lived in the neighborhood about five years testified: "The wooden sidewalk adjoining this permanent walk, on the east was somewhat higher than the permanent walk, and was loose; that is, it rocked when stepped on." Referring to a time before the injury, he said in answering questions which are here omitted: "I noticed it loose and rocking there for some time previous.

To the best of my knowledge and belief it was always rocking, ever since I lived there.  In passing over it I noticed that the natural earth was somewhat away from the supports on the north side of the walk.  If the north end went down, the south end would go up."  Referring to the west end of the board walk at the particular point where it joined that part of the old walk replaced by cement, the witness declined on cross-examination to state its condition before the change, but on redirect examination he was asked: "I want to know the condition of the joint or particular length of sidewalk immediately east of the cement.  State whether or not that joint or length of sidewalk immediately east of the wooden sidewalk was not in this rickety condition and would tip up when you stepped on it."  He replied: "It was."  On this subject there was considerable proof, and the testimony of plaintiff's witnesses on direct examination was somewhat weakened by cross-examination, but there was sufficient evidence to support a finding that the west end of the wooden sidewalk was defective at the place where plaintiff was injured.  The defect was of such a character and had existed long enough to charge defendant with notice in time to repair it prior to August 15, 1903.  *City of Lincoln v. Smith,* 28 Neb. 762.

The serious controversy between the parties however, relates to the cause of plaintiff's fall.  She steadfastly adheres to the theory of her petition wherein she states: "Her companion stepped upon the north side of said wooden sidewalk, which caused the same to tip up, and this plaintiff's foot caught under said wooden sidewalk, and *she was tripped and violently thrown.*"

On the other hand, counsel for defendant are just as confident that the proximate cause of the accident was not the defect in the wooden sidewalk, and attribute plaintiff's fall to another cause.  The following excerpt from defendant's brief will make the city's contention clear: "We submit that the evidence shows that appellee's fall was caused solely by her foot going under the board side-

walk at the east end of the cement walk, and that it was by reason thereof that she tripped and fell; that, the dirt being from under the stringer on the north side, the alleged tipping of the walk on the south side had nothing to do with it; that the contention of the appellee and her sister that the walk tipped and tripped her was false."

The court instructed the jury that plaintiff was not entitled to recover if her fall was caused by her foot going under the wooden sidewalk by reason of the fact that the board walk was higher than the cement walk. The inquiry on this branch of the case was thus limited to the tipping of the walk as the cause of the injury, and defendant's principal argument is directed to the point that there was no evidence to justify the court in submitting the case to the jury on that issue, and that there is no evidence to sustain the verdict in favor of plaintiff. The determination of this question requires an examination of the testimony. The record has been considered with care, but no extended analysis of the evidence can be made without making the opinion too long. Plaintiff testified that at the time of the accident she was walking along the north side of the street with her sister on her left. In giving her testimony she referred to her sister, and, among other things, said: "There was a board sidewalk—an old board sidewalk—and, as she stepped upon it, it tipped up and threw it higher than it was before. When she stepped, it raised it up still further." She also said her sister stepped on the north side of the walk, made it fly up, and that it threw her. She went back to see it afterward and it was loose. She tested it, and said it was rocking, and that the earth under it was green and mouldy and looked as if it had been in that condition for some time. On cross-examination she was asked: "What is it you say that caused you to trip there, or caused you to fall?" She answered: "The old sidewalk that was up higher than the other one. It tripped me up and put my foot under it." She said further on cross-examination that the day after the accident she and her sister tested the walk by stepping

on it, and that it came up a little and made a difference in the height. Referring to the tests made, she was asked by defendant on cross-examination: "Now, Mrs. Robinson, is that the only way you know that this walk flew up on that Saturday evening and you caught your foot under it?" This was answered: "I know that night when we were walking along I was holding my skirt and had my arm behind her; and she was just a trifle ahead of me, and so she must have stepped on the walk ahead of me, because she stepped just ahead of me, when I had my arm behind her, and she stepped up first." Defendant also asked plaintiff this question: "Then how do you know that that walk flew up and caught your foot so that your foot would go under it, if you could not see it?" Her answer was: "I could not tell that night just—that she did it at that time, because I could not see; but when we came to look afterward, that was the way it happened, because she was a little ahead of me; and if it would do it the next day, it would do it the night before." Without objection plaintiff was thus permitted to give her opinion of the cause of her fall. Enough of her testimony has been quoted to show that defendant asked her to repeat that opinion and to give the result of her tests. In addition she testified without objection: "When my sister stepped on the north end, it went up higher, so it made it impossible for me to step up that high." She was asked by her own counsel: "Was the tipping up of the board the cause of your falling?" Her reply was: "Yes, sir." She was recalled and asked: "Mrs. Robinson, yesterday in your cross-examination you were asked the question whether you ran your foot into the hole. Now, I wish you would explain your testimony, just what you mean and what happened. Now state just what you wanted to say there, and how you came to fall." This was answered without objection as follows: "Well, I think if the walk was natural, I would have stepped up on it. I would have stepped up that high; that I might have stepped up on it; but, in stepping on the other end, it threw it so much

higher that I set my foot under it and fell down." Plaintiff's sister was also a witness, and, in reply to a request to state what happened, testified without objection: "As I stepped up a little first, the other end went up, and that caused her foot to catch under the edge of the walk. I was on the north side, but she was on the south side." There is evidence that the condition of the west end of the board walk at the time of the injury was the same as it had been for a long time before the cement walk was constructed. The west end of the wooden walk terminated at a lot line, and there was no evidence that any of the stringers had been cut by the trespassers who constructed the cement walk or by other persons. The step was not of itself dangerous or evidence of negligence. *Morgan v. City of Lewiston,* 91 Me. 566, 40 Atl. 545; *Witham v. City of Portland,* 72 Me. 539; *Clark v. City of Chicago,* 4 Biss. (U. S.) 486. At the time and place of the accident, the sister and companion of plaintiff stepped on the wooden walk first without falling; and that plaintiff might have done so too, except for the tipping of the walk, is altogether probable. Testimony has been quoted to justify the trial court in submitting the case to the jury on plaintiff's theory as shown by the petition, and there is sufficient evidence in the record to sustain the verdict in her favor. Without objection defendant permitted plaintiff to state her conclusion or opinion as to the cause of her injury, and by its cross-examination reproduced the results of her tests as to how she was injured. This was evidence for the consideration of the jury. The record therefore contains evidence that the city was negligent in permitting its sidewalk to remain in a defective condition, and that the tipping of the walk was the proximate cause of plaintiff's injury. The trial court did not err in refusing to direct a verdict for defendant or in declining to set aside the verdict for want of evidence to support it.

"This court erred in permitting appellee to testify that the tipping of the walk was the cause of her fall." This is argued as a ground for reversal. On direct examination

plaintiff testified without objection that the tipping of the walk caused her fall. On cross-examination she was required by defendant to restate that conclusion or opinion. Later in the trial objection was made to a question calling for a similar answer. Defendant having refrained from making an objection in the first instance in the hope the witness would state that her fall was caused by the cement walk, or for some other reason, cannot complain of a subsequent ruling admitting similar evidence. It has long been a rule of this court that error cannot be predicated on the admission of proof identical with that previously admitted without objection.

To protect the cement walk when first constructed, barriers were placed at each end. In this connection complaint is made of the refusal of the trial court to give the following instruction: "You are instructed that if you find from the evidence that sufficient barriers were placed across the east end of the cement sidewalk and the west end of the board sidewalk at said point to protect the public from any defect which existed in said board sidewalk at said time, and that said barriers were removed by the contractor who built the walk or by other persons without the knowledge or consent or authority of the city authorities, then, before plaintiff can recover, you must find that a sufficient time elapsed between the taking down of said barriers and the time of the accident for the city in the exercise of reasonable care to have learned of the taking down of the barriers and to have repaired the sidewalk at the point or to have protected it by proper barriers or signals." The barriers were not meant to protect the public from a defective sidewalk. They were intended to protect the cement walk from the public, and not the public from the board walk. They were erected by trespassers, and were obstructions which anyone could lawfully remove as soon as the cement solidified. The construction of the sidewalk and barriers was the work of the same trespassers. At the request of defendant the court, in effect, told the jury that the persons who tore up

the sidewalk and replaced it with cement were trespassers in the street and sidewalk space, and that the city was not answerable for their acts. Defendant resisted plaintiff's claim on the theory that her fall "was caused solely by her foot going under the board sidewalk at the end of the cement walk," denied responsibility for resulting damages on the ground that the cement walk was constructed by trespassers, and insisted that the tipping of the board walk had nothing to do with the accident. Defendant is therefore in the attitude of denying responsibilty for the condition of the cement walk by denouncing it as the work of trespassers, and at the same time seeking to escape liability for the condition of the board walk, because the barriers erected by these same trespassers were removed without the city's consent. This is not a case for the application of the rule that "it is sufficient to show that proper signals or secure guards were placed about an excavation on quitting work, and neither the corporation nor its contractor is liable if a wrongdoer removes the signals during the night." *Dooley v. Town of Sullivan,* 112 Ind. 451. The lower court did not err in declining to give the instruction requested by defendant.

A number of instructions are criticised because, as defendant asserts, they do not limit the city's liability to the defect at the place of the injury. This criticism is unwarranted. The court instructed the jury as follows: "The burden of proof is on the plaintiff to establish by a preponderance of the evidence that the injury to the plaintiff was received in the manner substantially as alleged in her amended petition; that the sidewalk in question at the time and at the particular place where the accident occurred was in an unsafe and dangerous condition." It was unnecessary to repeat this admonition in other instructions. A picture showing the place of the injury and surroundings was introduced in evidence. The instructions as a whole made it clear to the jury that there could be no recovery unless the injury was caused by a defect in the board walk at the place where the accident

occurred. There was nothing in the instructions to mislead the jury on this issue. Other rulings in giving and in refusing instructions are also assailed, but all have been carefully examined with the result that no prejudicial error has been found.

The judgment of the district court is

AFFIRMED.

LETTON, J., dissenting.

Until the cement walk was laid, there was no step at the place of the accident. The condition of the walk's being slightly unstable so that it yielded at one side when walked over had existed for some time. This was not a dangerous condition as the walk then stood. Until the section of the walk was wrongfully removed, such an accident was impossible. No actual notice to the city of the defect which caused the accident was shown, and, the change in the walk not having been made for such a length of time as to charge the city with constructive notice of the defect which plaintiff asserts caused the injury, it was not liable. I think the case falls within the rule of *Nothdurft v. City of Lincoln,* 66 Neb. 430, that either actual or constructive notice to the city of the defect which caused the injury is essential to warrant a recovery, and that no such notice has been shown.

BARNES and ROOT, JJ., concur in this dissent.