BERT M. DAVIS v. STATE OF NEBRASKA.

FILED OCTOBER 21, 1927.   No. 25700.

*Bernard McNeny, Frank M. Colfer, John F. Fults* and *Edward J. Lambe,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *George W. Ayres, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

GOOD, J.

Bert M. Davis (hereinafter called defendant) was charged with administering to his wife, Blanche A. Davis, with felonious intent, strychnine poison and thereby causing her death, for which he was put on trial, convicted of murder in the first degree, and sentenced to imprisonment in the penitentiary for the term of his natural life. To review the record of his conviction, he. prosecutes error to this court.

The principal errors relied upon for a reversal are: That the information is insufficient to charge defendant with murder in the first degree; error in the admission of evidence; error in the failure of the court to instruct on all the issues; errors in giving instructions to the jury; and that the evidence is insufficient to sustain the verdict.

Counsel for defendant contend that the information is insufficient to charge murder in the first degree, because,

as contended, it fails to directly charge that poison was administered with the intent to take the life of Blanche A. Davis.

It will be conceded that there may be instances where one may administer poison to another which causes the death of such person, where the crime of murder in the first degree would not be committed. For instance, if a physician should prescribe and administer a poisonous medicine, with proper motives, but, through mistake, should give an over- or fatal dose, which would cause the death of his patient, he would not be thereby guilty of first-degree murder. Whether an information for murder in the first degree by the administration of poison is rendered fatally defective by the omission to charge therein that the defendant administered the poison with intent to take the life of the person to whom it was administered, we find it unnecessary to determine. Conceding, for the sake of argument only, that such an allegation is necessary, we think the information in the instant case is not vulnerable to the objection urged.

The information in the instant case charges that "Bert M. Davis, then and there being, did then and there unlawfully, feloniously, wilfully and purposely, and of his deliberate and premeditated malice, make an assault in and upon one Blanche A. Davis, with the intent of him the said Bert M. Davis unlawfully, feloniously, purposely and of his deliberate and premeditated malice to poison, kill and murder the said Blanche A. Davis." Then follows the allegation of administering the poison and her death.

The case of *Schaffer v. State*, 22 Neb. 557, cited and relied on by defendant, is not in point. The information which was condemned in that case did not contain an allegation with reference to intent, similar to the one herein set out. We think the information fairly charges that the poison was administered with the intent to take the life of Blanche A. Davis.

It may be observed in this case that the information is needlessly involved and teems wtih unnecessary verbiage

and repetition. As heretofore pointed out by this court, an information should charge the offense in simple, concise, direct language. A suitable form is prepared and set out in *Nichols v. State,* 109 Neb. 335. Of course, the form there given would not be entirely suitable for charging murder by the administration of poison. In lieu of the second paragraph of the form there outlined, the following would be all that is necessary to charge murder in the first degree by poisoning: "In ——— county, Nebraska, on August 30, 1925, John Doe, defendant, with intent to take the life of and kill Mary Roe, did feloniously and purposely administer to her (or cause to be administered to her) strychnine poison, and as a result thereof she died on August 30, 1925. Defendant thus committed murder in the first degree." Attention is called specifically to the form of information contained in the opinion in *Nichols v. State, supra,* in the hope that those charged with the prosecution of criminal offenses will hereafter draw indictments and informations conformable to the suggestions therein contained.

Complaint is made because the trial court permitted Doctors Myers and Eggers to testify to an examination of the body and organs of Blanche A. Davis, and that in their opinion she died of strychnine poisoning. It appears that, before they made their examination and chemical analysis of parts of the body of Blanche Davis, it had been embalmed and that there was no proof in the record of the ingredients of the embalming fluid used. It is argued that before the evidence of the doctors was competent it was the duty of the state to first prove that the embalming fluid used did not contain strychnine.

We do not think the point is well taken. By the provisions of section 9576, Comp. St. 1922, it is unlawful for an undertaker to embalm a dead body with any fluid or preparation which contains strychnine or preparations, compounds or salts thereof. Moreover, it is further disclosed by the evidence that strychnine would serve no useful purpose in an embalming fluid. It is not a preservative, and the presumption would obtain that the undertaker had not

violated the law; nor will it be presumed that the manufacturers of embalming fluid would use strychnine as an ingredient when it possesses no useful properties for the purpose for which embalming fluid is designed. The record also discloses that the state offered to prove the chemical composition of embalming fluid taken from a bottle which came out of the same carton as did the bottle containing the fluid used to embalm Mrs. Davis's body. This evidence was excluded on defendant's objection. It was not incumbent upon the state to prove that an embalmer or undertaker had not violated the law of the state, or to prove that the embalming fluid used did not contain strychnine. There is nothing in the record to create even a suspicion that the fluid used would account for the strychnine found in the body of Mrs. Davis after her death. The court did not err in overruling defendant's motion to strike from the record the evidence of the doctors.

Defendant contends that the evidence is insufficient to support the verdict; that it does not conclusively establish that Blanche Davis died as the result of strychnine poisoning, or that defendant administered strychnine to her.

The evidence is very voluminous. It would serve no useful purpose to outline it in detail, and we shall not attempt to do so. We think it is sufficient to say that there is evidence tending to prove, and from which the jury might properly find, the following facts to be true: That on the morning of August 30, 1925, Blanche A. Davis was taken violently ill and died in convulsions shortly thereafter; that her last illness was attended by all the symptoms of strychnine poisoning; that the next day after her death there was an autopsy held, and it was ascertained therefrom that all of her internal organs were in a normal condition and such as to exclude the hypothesis that she had died of any disease; that after the body was interred it was exhumed, and the liver, kidneys, spleen and other organs and parts of the body were removed, and a chemical analysis made by competent chemists; that a considerable quantity of strychnine, more than sufficient to produce death, was found

in the body; that competent physicians gave as their opinion that Mrs. Davis had died of strychnine poisoning.

Taking the evidence as a whole, it is sufficient to warrant a finding by the jury that Mrs. Davis died as a result of strychnine poisoning. From the evidence it clearly appears that the poison must have been either taken by Mrs. Davis, or that it was administered by defendant. The evidence tends to show that no strychnine was kept in any place where it was even remotely likely that it could have been taken by Mrs. Davis by mistake. There is nothing in the evidence that would remotely suggest that Mrs. Davis desired to quit this earthly existence, or that she had any motive for committing suicide. The evidence tends to negative the suggestion that she might have intentionally taken strychnine. On the other hand, the evidence tends to show that defendant had ceased to care for or have any affection for his wife; that he had become deeply enamored of and infatuated with one Mrs. Ressler, a widow, living in the immediate vicinity of the Davis home; that he very much desired to take her to his bosom as his wife, and that his then wife was an obstacle to the accomplishment of his desires. Thus, a strong motive is disclosed for defendant to commit the offense charged. If Mrs. Davis did not take the poison accidentally or intentionally, the defendant was the only other person who could have administered it. The evidence tends to disclose that defendant made false and conflicting statements concerning the cause of Mrs. Davis's death. There is some evidence tending to show that he had administered to her a dose of salts immediately before she became violently ill; that after administering the salts he had prepared and given her an orange, and that he stated to one of his acquaintances that he knew that she died of strychnine poisoning. The evidence further discloses that he had procured strychnine poison a long time before, that it had been used for exterminating gophers, and that it was upon his premises. It is further shown that, a few days before her fatal illness, Mrs. Davis had suffered an attack which indicated that she was suffering from fluoride of

sodium poisoning; that a receptacle containing this kind of poison was found in defendant's garage. It is shown beyond doubt that within four months of his wife's death defendant married Mrs. Ressler.

These and other facts disclosed by the record we think are sufficient to justify the jury in reaching the conclusion that defendant administered the strychnine which caused the death of his wife. The evidence seems to be sufficient to support the verdict.

Counsel for defendant contend that it was the duty of the trial court, by proper instructions, to submit to the jury the question of defendant's guilt of the several degrees of homicide, to wit, murder in the second degree and manslaughter, as well as murder in the first degree, and that it was the province of the jury to determine the degree of defendant's guilt.

So far as we are aware, this court has not heretofore determined the precise question as applied to a charge of homicide by the administration of poison. Section 9544, Comp. St. 1922, is as follows: "Whoever shall purposely and of deliberate and premeditated malice or in the perpetration of or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or causing the same to be done, kill another * * * shall be deemed guilty of murder in the first degree." This court has hitherto held that, where the offense was committed in an attempt to perpetrate a rape or robbery, it was not proper to submit to the jury the question of lesser degrees of homicide than murder in the first degree.

In *Thompson v. State*, 106 Neb. 395, it was held: "An information charging defendant with a homicide committed in the perpetration of or attempt to perpetrate a robbery, under section 8581, Rev. St. 1913 (now known as section 9544, Comp. St. 1922), charges only murder in the first degree, and it is error for the trial court to instruct the jury that they may find defendant guilty of murder in the first degree, guilty of murder in the second degree, or guilty of manslaughter." In *Morgan v. State*, 51 Neb. 672, it

was held proper to instruct that murder in the second degree and manslaughter were not included in the count of an information charging murder while attempting to commit rape, and a like holding was made in *Rhea v. State,* 63 Neb. 461, where the information charged murder committed in the perpetration or attempted perpetration of a robbery. We adhere to the rule there announced, and hold that the same rule applies where the charge is homicide committed by the administration of poison.

It was not error for the court to fail to instruct upon the lesser degree of homicide in this case for another reason: There was no evidence in the record which would justify a verdict of a lesser degree than murder in the first degree. We held in *Simmons v. State,* 111 Neb. 644: "In a prosecution for murder in the first degree, it is not error to refuse to instruct the jury as to the law applicable to manslaughter, when the evidence conclusively establishes that the defendant is either guilty of the crime charged or entirely innocent."

Counsel for defendant point out section 9563, Comp. St. 1922, which makes it a felony for any person to administer poison with intent to destroy or take the life of the person or persons to whom the same should be administered, or to do him, her or them an injury, and that this offense provides a less penalty than that provided for murder in the first degree. It is argued that the lesser offense is necessarily included in the charge made in the instant case, and attention is called to section 10153, Comp. St. 1922, which, *inter alia,* provides that "upon an indictment for an offense * * * the jury may find the defendant not guilty of the offense but guilty of an attempt to commit the same, where such an attempt is an offense."

Counsel argue that it was the duty of the trial court, by proper instruction, to submit to the jury for their consideration the question of defendant's guilt of the lesser and included offense of an attempt to take life by administration of poison, and that it was the province of the jury, in their discretion, to find the defendant guilty of the lesser

offense. The general rule applicable to the question may be stated as follows: Such an instruction is proper only when applicable to the evidence and where the evidence would justify a verdict of guilty of the lesser offense. If the evidence is such as to warrant only a verdict of the greater offense, or one of not guilty, then it is not proper to give such an instruction.

The case appears to have been tried by both plaintiff and defendant upon the theory that defendant was guilty of murder in the first degree or not guilty of any offense. A number of instructions requested by defendant proceeded upon this theory, and by his own act defendant practically requested the court to eliminate from the jury's consideration the defendant's possible guilt of the lesser and included offense. If it was error for the court to fail to submit to the jury the question of defendant's guilt of the lesser offense, such error was invited and requested by defendant. A litigant will not be permitted to take advantage of an error which he has invited. *Schrandt v. Young*, 62 Neb. 254; *Robinson v. City of Omaha*, 84 Neb. 642; *Edbrooke v. First Nat. Bank*, 110 Neb. 134; *Longman v. Pope*, 111 Neb. 838; *Day. v. Metropolitan Utilities District*, 115 Neb. 711.

The court did not commit error in failing to submit to the jury the included and lesser offense for a better reason: The evidence is sufficient to conclusively establish that Mrs. Davis died of strychnine poisoning and sufficient to justify the jury in finding that the poison was administered by defendant. There was no evidence that would justify the theory that the poison was administered by him with any other purpose than to take her life. There was, therefore, no logical theory upon which a verdict of guilty of the lesser offense could possibly have been rendered, and where the evidence is not such as to warrant such a verdict, it is not error for the court to fail or refuse to submit to the jury the question of defendant's guilt of the lesser offense.

Defendant has not shown that prejudicial error was committed. The judgment of the district court is

AFFIRMED.