■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EARL DAVIS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered August 6, 1975, convicting him of rape in the first degree (in satisfaction of a 10-count indictment), upon a plea of guilty, and imposing sentence. Judgment affirmed. Defendant contends that his plea was coerced by statements of the Justice at Criminal Term. While the *Wade* hearing was in progress, the court and defendant engaged in a discussion as to a possible guilty plea. We consider the court's statements, although no doubt made with the best of intentions, to have been highly

improper. To get the flavor of the remarks, we quote from the record: "THE COURT: I want this on the record. Take off his 'cuffs. Mr. Davis, this is the last chance that we're going to give you to reconsider your options. I don't want you to feel coerced because there's no coercion. I'm only telling you that if you get convicted, if you can't sell your story to the jury, then there's no question that you will get a minimum, a minimum of what the District Attorney's office recommends, twelve and a half to twenty five years. Now, if you're innocent, then you have got to stand up for yourself, and you have got to take whatever consequences there are. Right? THE DEFENDANT: Yes. THE COURT: If you're guilty there isn't any particular sense in exposing yourself to that kind of a sentence when, probably, I can get the Assistant District Attorney to agree to a minimum of seven and a half to fifteen. Do you understand? THE DEFENDANT: Yes. THE COURT: Now, in addition to just that statement, I would also like to have you consider the fact that if you take the stand in your own defense I will exclude, if I'm asked to, your previous rape, because I think that would be too prejudicial to the jury to hear. But I won't exclude any other convictions you have, the gun charge, I believe, so you will know exactly what you face when you take the stand. The District Attorney will go into that, but not your previous rape. I want to present to you in all candor and in all fairness to you so you have a pretty good shot, except for the fact it will go into the underlying facts of your guns or any other arrests or illegal acts that you have had. Now, you have got to convince or, to put it another way, the jury has to discredit the testimony of this complaining witness, and the jury must not believe her in order for you to be acquitted. Now, if you look at the pictures of this woman's skin that I just saw, although they don't cover the entire body, nonetheless they cover underneath her armpits and the side by her breast and so on, and if you think that a jury of twelve people, if they believe that you were responsible for that, would not convict you, then perhaps you have a different attitude towards evidence than I have. I think that, clearly, if they believe you did it, they will have no trouble convicting you of the top charge. Does that sound fair? THE DEFENDANT: Yes, it sounds fair. THE COURT: Okay. Have you ever seen the pictures? THE DEFENDANT: No. THE COURT: I think you ought to show him the pictures. I don't believe in keeping anything away from anybody. (Whereupon, photographs were shown to the defendant and his counsel.) THE COURT: All right? THE DEFENDANT: Yes. THE COURT: I'm hiding nothing from you. I want you to know everything. Now, I think your hope rests on the fact that you can prove or that the testimony will show that you are not the person. That's an extremely slim hope because this lady has testified she's met you ten or twelve times and she met you a few seconds before you entered her apartment. Now, if that's true, right, and if you in fact were there, don't you think that it is fair to assume that that jury will believe that you raped her, if they feel you were there, in light of those pictures, and in light of the fact she went to the hospital. Don't you think that's a fair assumption? THE DEFENDANT: I think so. THE COURT: Okay. Therefore, you are an intelligent man, what are the probabilities? Now, if you discuss that with your lawyer and you come to the conclusion that you would like to tell us the story and take advantage of the offer that you are going to get now, if you want it, seven and a half to fifteen years, then tell me. And if you don't want to take advantage of it, you will hear no more about it and we will finish up the trial and that will be the end of it. All right? THE DEFENDANT: Yes. THE COURT: You are not a child. I don't have to go into it fifty times with you. Those are the options open to you. I don't want to mislead you either. If you

are convicted and if I believe you have had a fair trial, and I insist you will get a fair trial, that you don't have to worry about, I tried to give everyone a fair trial, but if you are convicted, then I must be candid with you, the probabilities are that you will get twelve and a half to twenty five years. All right? THE DEFENDANT: Yes. THE COURT: Okay, talk to your lawyer and let me know what you want to do. (Whereupon there was a conference between the defendant and his counsel.) MR. MURPHY [defense counsel]: The defendant wishes to go to trial." The court in a criminal case may properly review the factors which a defendant might find relevant in making a determination as to whether he wishes to change his plea to guilty. The bounds of propriety are overstepped, however, when the court ceases to function in an impartial manner and becomes, instead, an advocate in persuading a defendant to plead guilty. In the case at bar, the whole tone and content of the court's remarks to defendant were calculated to impress him with the hopelessness of his situation and with the severe penalties which would be attendant upon his conviction after a trial. We strongly disapprove of such conduct by the trial court and, in the ordinary case, would reverse the judgment of conviction and remit the matter for a trial. However, here, after listening to the arguments of the court, defendant consulted with his attorney and declined to accept the plea bargain which was offered to him. Thereafter, the *Wade* hearing was completed and the court ruled upon the suppression motion. One week after the conclusion of the suppression hearing, and on the eve of trial and after ample opportunity to consult with his counsel, defendant again appeared before the court. He then moved to withdraw his previously entered plea of not guilty and to enter a plea of guilty to the crime of rape in the first degree, in satisfaction of the 10-count indictment. In the course of the change of plea proceedings, defendant admitted that he perpetrated this particularly atrocious crime in which the victim, among other things, was raped, stabbed and set on fire. Defendant's guilty plea, therefore, was not the product of the court's improper urgings, but was the result of the overwhelming case which the People were prepared to present and the eminently fair bargain which was offered to him. Under the circumstances, the original error was completely attenuated (CPL 470.05, subd 1). We have considered defendant's other contention and find it to be without merit (see *People v Post,* 23 NY2d 157). Latham, Acting P. J., Cohalan, Damiani, Shapiro and Titone, JJ., concur.