STATE OF NEBRASKA, APPELLEE, V. CLIFFORD H. DAVIS, APPELLANT.

278 N. W. 2d 351

Filed May 1, 1979. No. 42298.

Clifford Davis, pro se.

Paul L. Douglas, Attorney General, and Sharon M. Brueggemann, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is a post conviction action under the provi-

sions of section 29-3001 et seq., R. R. S. 1943. It follows the conviction of Davis in two criminal prosecutions consolidated for trial in which he was found guilty of (1) possession of heroin with intent to deliver, (2) illegal possession of a firearm by a felon, (3) being an habitual criminal, and (4) possession of a controlled substance. On earlier direct appeal to this court the conviction on charges (1), (2), and (4) above were affirmed, the conviction on charge (3) was vacated, and the cause was remanded for resentencing. State v. Davis, 199 Neb. 165, 256 N. W. 2d 678.

In this action, Davis pleads four grounds which he claims make the convictions unconstitutionally infirm and therefore void. These are: (1) He was denied discovery of handwriting exemplars which he claims would have demonstrated that search warrants used in the search of his residence were forged. (2) He was deprived of effective assistance of counsel because the court refused a continuance which he had requested in order that he might take the deposition of one Washington, an alleged informant on whose information the warrant was based and who, at the time of request for continuance, was incarcerated in a San Francisco jail. (3) He was denied compulsory process for witnesses on his own behalf. This claim relates to compelling the appearance of the informant Washington. (4) He was denied a full and fair hearing on the validity of the search warrants.

The District Court granted an evidentiary hearing at which Davis represented himself, having expressly declined the offer of the court to appoint counsel for him. After the hearing the court refused to vacate the convictions and sentences. We affirm.

Underlying all of the stated grounds for relief is Davis' claim that he was the victim of a conspiracy managed by Omaha Police Officer Farmer and other persons who caused or assisted in the planting

of the controlled substance in Davis' residence and then seized the contraband in a search of his apartment using a warrant which was invalid because, among other things, the judge's signature thereon had been forged.

To establish the factual basis for his claim of conspiracy, Davis, at the evidentiary hearing, called three members of the public defender's office of Douglas County, two of whom had represented him either in preparation for or at the trial at which he was convicted, and two deputy county attorneys of Douglas County.

One of the evident purposes of the testimony was to impeach the veracity of Officer Farmer. One of the public defenders testified, without objection being made by the State, that Davis told him the identity of an unnamed informant referred to in an affidavit used to procure a search warrant against Davis in another case. Davis had drawn the conclusion that that particular party was the informant because that person was the only one in his home at the time in question and so was the only person who could have had the personal knowledge of the presence of the controlled substance as described in the affidavit. This assistant public defender testified he then called the alleged informant, who at the time of the call was incarcerated in Kearney, and the latter denied he was the informant. The witness then relayed this information to the prosecutor. Some time later the action against Davis was dismissed. The witness concluded that because the action was dismissed, the police officer must have lied in the affidavit and on that account the prosecution was dismissed.

A second member of the public defender's staff testified he was informed by a member of the county attorney's staff that Washington was the informer referred to in the affidavits in the prosecution here involved. After being so informed, he made a tele-

phone call to San Francisco and talked to Washington who was then incarcerated in a San Francisco jail. In the first telephone conversation with Washington, Washington declined to give any information except to say he did not know Davis and to add that he wanted to think over whether he wanted to say anything further. Later, Washington made a collect call back to the witness. In that telephone conversation, Washington reiterated he did not know Davis and would not recognize him if he saw him, but he (Washington) knew the controlled substance had been planted in Davis' apartment; that certain other people also knew this, including Officer Farmer; and the arrangement was that Washington would notify "interested parties" when the plant had been made. Washington said one Herbert Offord (Alford) could verify all this. He also stated he could prove the story because he had taped a conversation of the "set up" and Officer Farmer's voice was on the tape. He indicated his willingness to testify if permitted to do so. A third member of the public defender's staff testified that at the request of his colleague he listened to the second conversation with Washington. He verified the substance of what Washington said.

At the time of the conversations, Washington was wanted in Omaha in connection with a homicide charge and also as a witness in the case against Davis. Attempts were being made to extradite Washington to Nebraska, but these were unsuccessful as Governor Brown of California denied extradition.

Testimony at the evidentiary hearing indicated that at the time of trial, Offord, who purportedly had the same knowledge as Washington, was incarcerated in the Nebraska Penal and Correctional Complex. Although Davis knew this, he did not attempt to call Offord as a witness on his behalf, either at trial or as a witness in the evidentiary hearing.

From the two members of the county attorney's staff was elicited the following information. One of them made a trip to San Francisco and talked to Washington in an effort to get him to waive extradition. He was unsuccessful. Washington did not tell him that he had any information about drugs being planted in Davis' apartment. The second member of the county attorney's staff made a trip to San Francisco for another purpose, but while there, talked to Washington's attorney about extradition. He did not talk to Washington and did not have any information from Washington about a conspiracy or the planting of drugs.

The record indicates the District Court judge denied Davis' motion for discovery. The matter being complained about here is the denial of the production of handwriting exemplars of Judge Elizabeth Pittman and Officer Farmer. Davis argues these are required to be produced under the provisions of section 29-1912, R. R. S. 1943. It is plain that section 29-1912, R. R. S. 1943, does not refer to such matters, but, insofar as pertinent here, relates to things in the hands or control of the prosecutor which might be used by the State as evidence. See § 29-1912 (f), R. R. S. 1943. There is no way an order to the prosecuting attorney could require third parties to give handwriting samples. It is not claimed the prosecutor had the exemplars in his possession. Exemplars are not things which the State could have used in the prosecution of Davis. The record does indicate the municipal judge voluntarily gave to Davis' attorney a signature sample. Davis made no use of it. Neither did he call the municipal judge to testify as a witness as to whether or not her purported signature on the warrant was genuine. He apparently did not attempt to get a signature sample directly from Officer Farmer whom he claims committed the forgery. It is clear from the record of the previous suppression hearing that Davis was contending at

that time that forgeries had been committed.

One member of the county attorney's staff testified that in his telephone conversation with Washington, Washington indicated he was in fear for his life if he were to be returned to Nebraska.

The District Court did not err in denying post conviction relief. The denial of the motion for a continuance and the validity of the search warrants were both issues which were raised on the direct appeal in this case. The record indicates that all of the circumstances which would have supported a continuance and the alleged facts surrounding the validity of the warrant were known to Davis at the time of that appeal. He now seeks to relitigate those issues making new arguments. An issue which has been fully litigated by direct appeal cannot be relitigated in an action for post conviction relief or by mere presentation of different arguments if the alleged facts are known to the defendant at the time of direct appeal. State v. Moss, 191 Neb. 36, 214 N. W. 2d 15; State v. Moore, 192 Neb. 74, 218 N. W. 2d 540.

The record does not establish that Davis ever made any request to the District Court, either prior to trial or since, to take steps under the provisions of section 29-1906 et seq., R. R. S. 1943, or section 29-3206, R. R. S. 1943, to procure the attendance of Washington as a witness.

The factual basis for all four of Davis' claims depended upon the assertion that he was the victim of a conspiracy and of planted evidence. The burden was on Davis to establish the factual basis for such a claim. The determination of whether or not such a conspiracy existed and whether the evidence was strong enough to require the conviction to be vacated, so the matter might be more fully explored, rested upon the judgment of the trier of fact as to the credibility of that evidence. We have many times said that questions of credibility are for the trier of fact and not for this court. In connection therewith

we point out the following: Davis made no effort to support his claim in the post conviction action by deposition testimony of Washington. Davis did not, at trial nor at the evidentiary hearing, attempt to procure the testimony of Offord who was an available witness in Nebraska and who purportedly had the same information as Washington. Neither at the suppression hearing nor in the post conviction action did Davis call the municipal judge to support his claim of forgery. This would have seemed the obvious thing to do. If there was a forgery, it could have been proved by the testimony of the municipal judge. The record shows Davis' counsel talked to the judge but did not call her as a witness. Davis made no attempt to make any use of the signature sample which the municipal judge voluntarily furnished to him. The District Court judge who presided at the evidentiary hearing could well have concluded that Davis wanted to use, in his quest for post conviction relief, only testimony which was absolutely safe and which could not be subjected to scrutiny, i.e., the hearsay recitals of what Washington and the informant in the unrelated case told the witnesses in telephone conversations.

AFFIRMED.