STATE OF NEBRASKA, APPELLEE, v. JOSEPH C. SVOBODA, APPELLANT.

287 N. W. 2d 41

Filed January 3, 1980. Nos. 42468, 42469, 42470.

Thomas M. Kenney, Douglas County Public Defender, and Bennett G. Hornstein, for appellant.

Paul L. Douglas, Attorney General, and Linda A. Akers, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

PER CURIAM.

The defendant, Joseph C. Svoboda (hereinafter referred to as Svoboda), has appealed to this court from a denial of his motion for post conviction relief

in each of three original criminal proceedings. The motions were considered together below and have also been consolidated for briefing and argument in this appeal. We reverse and remand for a new trial.

This is the third appearance of Svoboda before this court on these charges, and therefore a lengthy reiteration of the facts giving rise to these actions is unnecessary. It is sufficient merely to give a brief summary of the events culminating in this appeal. Svoboda was originally charged with three counts of burglary, two of which were supplemented with habitual criminal charges; and in addition he was charged with one count of failure to appear after release on bond. He originally pled not guilty on each of the burglary counts. At the beginning of the second day of trial, Svoboda made a motion in open court to disqualify his attorney. An "in chambers" hearing was held following which the court denied Svoboda's motion. Immediately following the discussion, the trial court suggested that Svoboda reconsider the plea bargain offered him by the State. After consultation with his attorney, Svoboda accepted the plea bargain, and entered a plea of nolo contendere to two counts of burglary and one count of failure to appear. The jury was then dismissed, and the court sentenced Svoboda on the three counts. Following sentencing, Svoboda appealed the convictions to this court. We dismissed his appeal on procedural grounds. State v. Svoboda, 194 Neb. 663, 234 N. W. 2d 901 (1975). Svoboda then filed motions for post conviction relief, contending that his pleas were involuntary because of alleged participation by the trial court in the plea bargain, and also alleged a conspiracy between the prosecution and Svoboda's counsel. These motions were summarily denied by the trial court on the ground that the issues raised there had been raised in the direct appeal of the convictions. On appeal of the denial of these motions for post conviction relief to this court,

we reversed the order and remanded the cases for an evidentiary hearing on the issues raised by Svoboda, noting that our original decision was based on the procedures used, not on the merits of his case. State v. Svoboda, 199 Neb. 452, 259 N. W. 2d 609 (1977). An evidentiary hearing was thereafter held, and Svoboda was again denied relief. The present appeal followed.

Svoboda first contends that the alleged participation by the trial judge in the plea bargain discussions amounted to such coercion as to make his pleas involuntary. Since the issuance of the opinion in 1971, this court has consistently followed State v. Turner, 186 Neb. 424, 183 N. W. 2d 763 (1971), in which we adopted the American Bar Association Standards Relating to Pleas of Guilty as minimum standards with reference to accepting pleas. Section 3.3(a) of those standards provides: "The trial judge should not participate in plea discussions." This provision has been variously interpreted, and we note that the extent of judicial participation which has been permitted in other jurisdictions varies greatly. See, Brown v. Peyton, 435 F. 2d 1352 (4th Cir., 1970), cert. den., 406 U. S. 931; People v. Davis, 387 N. Y. S. 2d 909 (App. Div., 1976); Scott v. United States, 419 F. 2d 264 (D. C. Cir., 1969); Commonwealth v. Sanutti, 454 Pa. 344, 312 A. 2d 42 (1973); Address by Judge Hoffman, Ninth Circuit Judicial Conference, 53 F. R. D. 499 (June 30, 1971); Bond, Plea Bargaining and Guilty Pleas, §§ 6.01 to 6.19, pp. 272 to 303.

However, we believe the participation by the trial court in these actions was such as to make Svoboda's pleas involuntary under any interpretation of the authorities. Svoboda made a motion to dismiss his counsel at the start of the second day of the trial. The discourse between the trial judge and Svoboda at that time was as follows:

"MR. SWOBODA: I don't feel he [my attorney] is

prepared. As a matter of fact, he hasn't prepared my case, my defense. Everything has been, 'Plea, better plead, better plead, otherwise they are going to hang you. Plead.' He never did come up to interview me, never. When he came up it was always to try to persuade me to make a plea.

"BY THE COURT: Well, I'm sure [your attorney] worked very diligently in trying to effect a plea bargain, Mr. Swoboda. I know this probably for a fact, from the conferences that I have had with the County Attorney and [your attorney]. But I will tell you this, you were at one time charged with five felonies. You are still charged with four felonies. [Your attorney] told me earlier that you were willing, and you can deny this now if you want, but he told me that you were willing to plead to two burglaries and the escape charge if the State would dismiss the other charges and drop the habitual criminal charge. Now, you are perfectly entitled, if you want to deny it, fine, it isn't all that important, and even if it's true you are entitled to change your mind and have a trial. I think [your attorney] was working in your best interest and I will tell you another reason why, *Mr. Swoboda, I have heard the evidence so far, and the State's evidence is overwhelming toward your guilt. In my experience in trying criminal cases I have never heard evidence so overwhelming.* Now, I don't know what you plan to present as far as a defense, but I'll tell you this much, in consideration of what [your attorney] has done and what you claim he has done, I am convinced he was working toward your best interest and detrimentally to your best interest.

"You do whatever you want. You have a Constitutional right to a trial and to have the State prove the guilt beyond a reasonable doubt.

"Mr. SWOBODA: I told him I didn't want what he entered in the record yesterday and I didn't want that in.

"BY THE COURT: All he wanted to do was protect himself, because when he has recommended that you accept a plea bargain offer by the County Attorney and you don't do it, he simply wanted a record so that later on if you complained that he didn't do anything for you, and he wants to show now that he did. And you don't have to accept any plea bargain. You are entitled to your Constitutional rights to a trial by jury, and that's what we are having.

"I will never punish a defendant for exercising that Constitutional right, and I do not play any part in a plea bargain, but from what I can see, Mr. Swoboda, [your attorney] was acting in your best interest and not in any conflict of interest in working with the County Attorney and in recommending the offer that the County Attorney has made, as far as a plea bargain is concerned. *Because I will repeat it again, I have never seen a case in which the evidence is so overwhelming. Now, maybe you are going to come in with a defense that would balance that out. I don't know, but as of this point, in the State's case, I have never seen a more overwhelming case of evidence toward the guilt of the defendant.*

\* \* \*

"BY THE COURT: Well, now you [Svoboda] have heard it [the plea bargain]. Are you still willing to plea bargain on that basis, Mr. Pane? *You may be thinking it's difficult to believe that he could not understand that, but on the other hand, it's so incredible, frankly, to the Court, that he would insist on having a trial with the evidence as I have seen it, that maybe he did misunderstand it.* This is an unusual situation that we are discussing right now. Ordinarily the Court plays no part in a plea bargain, but you come up after a day of trial and claim your attorney — you don't want him to represent you, and you have told me nothing except facts which your at-

torney is acting in your best interest. Now, do you understand what the plea bargain was?

\* \* \*

"BY THE COURT: Mr. Swoboda, I'm not going to discharge your attorney at this point, I think he has acted in your best interest, both in his negotiations before trial and in his handling of the trial. I think he has done a remarkable job in his cross-examination of the State's witnesses for what little he had to even discuss on cross-examination, in trying to create reasonable doubt. There may be some question about this business of the car that you bring up, I don't know whether the County Attorney is intending to tie it up later or not. Do you, Mr. Pane?

"MR. PANE: I could.

"BY THE COURT: It might be a matter of irrelevant evidence that they find a car with an Iowa license plate and tow it in at this point.

"MR. PANE: I can tie it up.

"BY THE COURT: It might also be irrelevant about the testimony by Mr. Leehy about items taken from his place prior to seven o'clock, and in fact I intended to strike that from the record and admonish the jury to disregard it. *I can assure you even if those two items stayed in the evidence, unless the evidence gets better, as far as the defendant's guilty* [sic] *or innocence is concerned the Supreme Court would undoubtedly say that if there was any error it was harmless in the face of the overwhelming evidence of guilt.*

"I'm not going to discharge [your attorney], and as long as we are in recess now, I suppose the next matter you might want to consider is, if the State is still willing to offer this as a plea bargain, and if you do understand it now, if you are interested in accepting it. Do you want to talk to [your attorney] or consider it on your own for a bit now, in private?

"MR. SWOBODA: (Nods head affirmatively.)" (Emphasis supplied.) (Although in the pleadings

and brief filed by counsel defendant's name was spelled "Svoboda," we note that frequently in the record it was spelled "Swoboda.")

We believe a fair reading of the foregoing indicates that the trial court imparted to Svoboda the impression that the court viewed Svoboda's guilt as proven at this stage of the trial. Under similar circumstances it was stated in People v. Davis, 387 N. Y. S. 2d 909 (App. Div., 1976): "The court in a criminal case may properly review the factors which a defendant might find relevant in making a determination as to whether he wishes to change his plea to guilty. The bounds of propriety are overstepped, however, when the court ceases to function in an impartial manner and becomes, instead, an advocate in persuading a defendant to plead guilty. In the case at bar, the whole tone and content of the court's remarks to defendant were calculated to impress him with the hopelessness of his situation and with the severe penalties which would be attendant upon his conviction after a trial."

We likewise think it is clear that the trial court's remarks to Svoboda, whether so intended or not, must have and did impress upon Svoboda the hopelessness of his situation, and brought about the nolo contendere pleas to the three counts. At the evidentiary hearing, Svoboda stated: "The Judge — the Judge came in and become involved in the plea bargaining discussions. He initiated — I raised my hand for the intentions of disqualifying my attorney, and he told me that he would not disqualify him, and he initiated plea bargain discussions and directed them all the way through. I felt the pressure along with the County Attorney and my own lawyer, manipulating me around until I felt that if I did go to trial I wouldn't stand any kind of a chance. I would be facing longer sentences, and that's why I became disgusted and just pled guilty."

In so doing, we believe the trial court, perhaps un-

wittingly, became an advocate instead of an impartial referee. There is little question that the power and prestige of the trial court undoubtedly had an effect on Svoboda. We fully agree with the statement of the court contained in United States v. Gilligan, 256 F. Supp. 244 (S. D. N. Y., 1966), which case was decided even before the adoption of the American Bar Association standards forbidding participation by the trial judge in plea bargaining in criminal cases. In that case the court said: "The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice. Intentionally or otherwise, and no matter how well motivated the judge may be, the accused is subjected to a subtle but powerful influence. * * *

"A judge's prime responsibility is to maintain the integrity of the judicial system; to see that due process of law, equal protection of the laws and the basic safeguards of a fair trial are upheld. * * *

"It may well be, as has been suggested, that voluntary, as distinguished from coercive, bargaining between the prosecutor and the defendant has been sanctioned by propriety and practice — in some measure they deal at arm's length. But this is quite different from approbation of plea bargaining between the judge and the accused, where the dispar-

ity of positions is extremely marked. As has been urged: 'Our concept of due process must draw a distinct line between, on the one hand, advice from and "bargaining" between defense and prosecuting attorneys and, on the other hand, discussions by judges who are ultimately to determine the length of sentence to be imposed.' ''

We do not say that every time a trial judge enters a plea bargain discussion, he is overstepping the bounds of his office and coercing a defendant. However, where, as here, the actions of the court evoked an immediate response from a previously intransigent defendant, we are forced to conclude that the plea was involuntary.

We therefore find that under the facts of this case, Svoboda's pleas were not voluntary, and in view of our decision on this issue, we need not examine Svoboda's other assignments of error. The orders of the lower court are reversed, and the actions appealed from are remanded for a new trial.

REVERSED AND REMANDED.

CLINTON, J., dissenting.

I dissent from the majority opinion for the following reasons: (1) The issue in this post conviction proceeding to vacate a judgment entered upon a plea of nolo contendere is one of fact, i.e., was the defendant's plea voluntary. This court ignores the finding of fact by the District Judge which is clearly supported by the evidence and decides the issue here as one of law. We have often said: "In post conviction proceedings under section 29-3001 et seq., R. R. S. 1943, the District Court is the trier of disputed questions of fact and it is not ordinarily for the Supreme Court to determine questions of credibility." State v. Davis, 203 Neb. 284, 278 N. W. 2d 351. (2) The "participation" by the District Judge, who presided at the aborted trial of the defendant and who accepted the plea and pronounced sentence, was clearly invited by the defendant's own actions and

comments. We have said that a defendant cannot complain of error which he invited the court to commit. State v. Kirby, 185 Neb. 240, 175 N. W. 2d 87; Stuckey v. Rohnert, 179 Neb. 727, 140 N. W. 2d 9; Davis v. State, 116 Neb. 90, 215 N. W. 785; Corcoran v. United States, 19 F. 2d 901 (8th Cir., 1927).

I have no quarrel with the abstract proposition that the trial judge is not to be a participant in plea bargaining discussions. Neither, of course, can anyone challenge the right of a defendant to have the jury speak the final word on his guilt or innocence no matter how overwhelming the evidence against him. The point is that in this case the evidence supports the conclusion of the District Judge that the defendant waived that right knowingly and intelligently.

In order to establish the propositions which I advance for this dissent, it is necessary to examine the record. The majority opinion accurately quotes the conversations between Svoboda and the trial judge. That, however, is not the whole picture. No mention is made of the testimony of the defendant's attorney at the post conviction hearing. No mention is made of the "overwhelming" (an understatement) evidence of guilt. The fact that the trial judge used the quoted adjective did not tell the defendant something he was not already well aware of. No mention is made of the defendant's actual admission of guilt before he tendered his nolo plea. Before the trial judge accepted the plea, he very carefully explained to Svoboda all his constitutional and statutory rights and gave assurances, which we will later quote, that a defendant is never penalized by him for insisting upon a trial. No mention is made of the defendant's obviously sophisticated knowledge of criminal procedure. Surely the judge who presided at the post conviction hearing (not the same judge as the one who presided at trial and whose conduct is criticized) was entitled to consider all those things in making the factual determination of what induced the de-

fendant to plead rather than letting the jury decide.

Let us now examine the record. In the midst of the trial and in the presence of the jury, Svoboda announced: "Your Honor, I would like to disqualify Mr. Matejka as my attorney." The court promptly called a recess and had the jury retire from the courtroom.

At the time Svoboda made his announcement, the State had presented the testimony of four witnesses. The evidence, up to that time, if believed by the jury, would have entitled them to find that the owner of the burglarized building observed the defendant in the act of leaving the building, carrying with him stolen property; and that the defendant was pursued and cornered by the owner and another civilian, and then arrested by the police whom someone had called during the chase.

Briefly summarized, the testimony was as follows. Samuel Moskovits, the owner of the six-plex apartment where the burglary took place, was working on an air conditioner outside the building when he noticed a stranger (Svoboda) leaving the back door of the building, carrying a large box-shaped object which was covered with a blanket. Svoboda also carried a radio. Moskovits, suspecting something was wrong, accosted Svoboda and raised the blanket. The object was a TV set which Moskovits immediately recognized as belonging to one of his tenants. Moskovits was an electronics technician and had performed services on that particular set. The witness then directed Svoboda to take the set back into the building. Svoboda put down the TV set, threatened Moskovits with a pipe wrench which he had in his pocket, and started to flee. Moskovits yelled for assistance and one of his tenants, Leehy, one of the four witnesses at trial, joined the chase, taking a different route than Moskovits, and intercepted Svoboda's line of flight. He confronted Svoboda and was threatened with the wrench and he backed off.

The chase continued until Svoboda fled into a bar. Moskovits covered one exit and Leehy the other. Inside the bar Svoboda entered the toilet room, took off the blue shirt which he had been wearing, and placed that and the wrench he had been carrying in a wastebasket. He then entered the bar in a T-shirt. About that time the police arrived, Svoboda was arrested in the bar, and the shirt and wrench were seized. The identification of Svoboda by Moskovits and Leehy was positive. The breaking and entering of the apartment and the theft were established by other evidence.

Out of the presence of the jury and during the exchange of conversation between the trial judge and Svoboda, Svoboda claimed, among other things: ". . . there is a conspiracy between the prosecution and Mr. Matejka [his attorney]." The judge asked Svoboda to be more specific. Svoboda said: "He tried to persuade me numerous times to plead guilty to a charge I don't want to plead guilty to." Also: "I feel he hasn't defended me to the best of his ability. BY THE COURT: In what way? MR. SVOBODA: In every way, shape and form." Svoboda then complained about a failure of counsel to object to certain testimony. He then charged that Matejka had a "conflict of interest" because Matejka had a prior acquaintanceship with Moskovits and had done legal work for him. He complained that Matejka had not "prepared my" defense.

Then occurred the interchange between the judge and Svoboda which is quoted in the court's opinion. During the course of that exchange, the court said: "You do whatever you want. You have a Constitutional right to a trial and to have the State prove the guilt beyond reasonable doubt. . . . And you don't have to accept any plea bargain. You are entitled to your Constitutional rights to a trial by jury, and that's what we are having. . . . I will never punish a defendant for exercising that Constitutional right,

and I do not play any part in a plea bargain, . . . ."

It would have been well nigh impossible as well as unrealistic for the District Judge to respond to the defendant's frivolous motion to permit dismissal of his own retained attorney without taking into consideration the strength of the State's case against the defendant.

At the post conviction hearing, Svoboda made the same and numerous other complaints about the effectiveness of his counsel. We will not detail the testimony. Suffice it to say that it did not, on its face, appear credible and the trial judge was not required to believe it. The complaints about failure to object to testimony were of no merit whatever as the testimony was competent and relevant and the foundation therefor had been laid.

Mr. Matejka was called as a witness by the State and, on the advice of his then attorney, Svoboda waived the lawyer-client privilege. Matejka told of being called by Svoboda and talking to him at the county jail for about an hour. He advised Svoboda that he would have to go to the county attorney's office and get a copy of the complete file, including the investigation. That he did. He testified that he read it thoroughly and went through it several times. He then went back to talk to Svoboda. Svoboda then admitted the crime as indicated by the investigative report. Svoboda's only defense was that he would not have done it if he had not been drinking.

Svoboda had pending against him five criminal charges as well as two habitual criminal charges. Matejka advised Svoboda that the best thing to do was to plea bargain with the county attorney.

The record indicates that shortly before the trial commenced, Matejka had arranged that in exchange for a plea of guilty to two of the burglary charges and a charge of failure to appear, the other charges, including the two "bitches" (Svoboda's

phraseology for the recidivist charges) would be dismissed. Svoboda wanted a guarantee from Matejka that the sentences imposed by the judge would be concurrent. Matejka told him there was no way he could guarantee that. Svoboda then declined the bargain and the case went to trial.

After the interruption of the trial and after the exchange between Svoboda and the judge and before the plea was entered, Matejka and Svoboda had a private conversation, the bargain was still open, and Svoboda agreed that was the best route to go.

As to the alleged "conflict of interest," Matejka acknowledged that he had known Moskovits and that about 18 years earlier he had represented him in a municipal court matter, but he actually did not recall that until Moskovits reminded him of it. Matejka denied accusations by Svoboda that he had agreed to try to bribe Moskovits in this case and thus get the charges dismissed.

While the charges involved in this case were pending, Svoboda apparently jumped bond. He was then arrested and charged with being a felon in possession of a firearm. Matejka represented Svoboda on that charge and secured a dismissal after preliminary hearing, apparently because of failure of the State to prove that Svoboda was a felon.

The trial judge testified during the post conviction hearing as to what had occurred.

The record of the trial shows that after Svoboda indicated he wanted to plead, his constitutional rights were explained to him in a most thorough manner by the trial judge. Svoboda waived all those rights. He acknowledged his plea was free and voluntary and he knew the effect thereof. The court, among other things, asked: "Do you feel you are guilty of this charge, the one we are trying now?" He answered: "Yes."

How can it be said in the light of the evidence that the finding of the judge who conducted the post con-

viction hearing that the plea was intelligent and voluntary is not supported by the evidence? The outcome does not depend upon an "interpretation of the authorities," as the majority says, but upon a factual determination.

This is not a good case to use as a vehicle to apply a "sanction" against society because one of its agents, the trial judge, was whipsawed by a knowledgeable defendant. Svoboda is about 41 years of age. He has been involved in burglary since 1949 and has numerous convictions for that offense and many others. He is obviously completely familiar with criminal court procedures.

This case, as the majority opinion shows, is now before this court for the third time. The decision of the court on this occasion ultimately means that it will appear before us a fourth time on direct appeal and probably then for a fifth time on post conviction review.

At this point I make the following personal observations, which I have previously made in the Law Day issue of the Omaha Daily Record 2 years ago.

In the area of criminal law, a criticism frequently voiced is that litigation never seems to end. Much of that criticism is completely justified. Review by direct appeal is followed by post conviction proceeding in the trial court and then another review of that proceeding in the court of last resort of the state, followed by collateral habeas corpus attack on the judgment in the federal district court, and then review by the federal court of appeals. Why such multiplicity is required to secure "justice" is difficult for the layman to understand. The truth is that it is not necessary for that end. Multiple, piecemeal, and parallel litigation is largely a phenomena of the last 25 years primarily as a consequence of decisions of the United States Supreme Court expanding the habeas corpus jurisdiction of the federal district courts. The practice should come to an end.

I would suggest that a partial solution to the problem would result from a repeal by the Nebraska Legislature of the Post Conviction Act. That act, enacted in 1965, was designed largely to provide relief in those cases where state convictions were believed to be constitutionally infirm because of a violation of constitutional rights "discovered" by the Supreme Court of the United States and given retroactive effect by that court after state convictions had become final. The Post Conviction Act, however, was not limited by its terms just to those cases. The newly discovered rights era seems to have come to an end and the original purpose of the Post Conviction Act is no longer served as the retroactive rights cases have all been reviewed. The act has now come to be used by some lawyers, as well as by prisoners who act pro se, as a routine tool for the prolongation of litigation. Some defense counsel now, deliberately and as a matter of tactical choice, fail to raise constitutional issues on direct appeal, saving them for a subsequent post conviction proceeding if the direct appeal fails to produce a reversal of the judgment. It was not the original purpose of the Post Conviction Act to foster piecemeal litigation. It was thought that it would relieve the federal courts of some of the load of habeas corpus cases arising from state court convictions. The fact is it resulted merely in putting two more steps into the multiple litigation process without in any way relieving the load on the federal courts.

There is nothing inherently unfair in requiring a defendant to raise on his direct appeal all of the errors he claims, including those involving alleged violations of constitutional rights, and in foreclosing him from thereafter raising them in the state courts if he does not. State habeas corpus proceedings should be available only where there is a jurisdictional defect resulting in a void judgment. The common law writ of error coram nobis is still available

where there may have been an actual miscarriage of justice and where some fact or facts unknown at the time of trial are later discovered and these new fact or facts would probably result in a different verdict.

The Nebraska Legislature should repeal the Post Conviction Act, section 29-3001 et seq., R. R. S. 1943.